IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SEAN TAPP,

               Plaintiff,

     v.                                Civil Action No.
                                     9:05-CV-01479 (NAM/DEP)

R. TOUGAS, *et al.,*

               Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

SEAN TAPP, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        STEVEN H. SCHWARTZ, ESQ.
Attorney General of the State     Assistant Attorney General
  of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Plaintiff Sean Tapp, a former New York prison inmate who is now

apparently in the custody of Pennsylvania officials, has commenced this

civil rights action pursuant to 42 U.S.C. § 1983 against Donald Selsky,

who at the relevant times served as an Assistant Commissioner of the New York State Department of Correctional Services ("DOCS"), and various other employees of the department including four corrections officers, a sergeant, a nurse, a hearing officer, and a guidance counselor, complaining of several constitutional violations alleged to have occurred during the time of his confinement in New York.  In his complaint, as amended, plaintiff asserts claims stemming from a series of events precipitated by an altercation between himself and several corrections officers.  Plaintiff maintains that he was assaulted by corrections workers without provocation, denied adequate medical care for injuries sustained during the course of the conflict, and subjected to a lengthy period of disciplinary special housing unit ("SHU") confinement as a result of the incident, purportedly without first having been afforded the procedural safeguards guaranteed under the Fourteenth Amendment.  As relief, *inter alia,* plaintiff seeks a mandatory injunction directing the restoration of good time credits forfeited as a result of the incident and directing his release from prison, termination of all defendants' employment with the DOCS, and recovery of $15 million in compensatory and punitive damages.

Now that pretrial discovery has concluded, the defendants have moved for summary judgment requesting dismissal of plaintiff's claims,

2

arguing that they are substantively deficient, and further asserting their entitlement to qualified immunity.  In addition to opposing defendants' motion, plaintiff has since cross-moved for summary judgment on the issue of liability, based substantially upon the allegations as set forth in his complaint.

Despite the existence of what at first blush appear to be conflicting accounts of the circumstances surrounding plaintiff's excessive force claim, having surveyed the record I am convinced no reasonable factfinder could credit plaintiff's version and find in his favor with respect to that claim.  Additionally, discerning the existence of no genuine issues of material fact surrounding plaintiff's remaining claims, including for deliberate medical indifference, the issuance of a false misbehavior report, and violation of his procedural due process rights, and similarly concluding that no reasonable factfinder could rule in plaintiff's favor on any of those claims, I recommend that defendants' summary judgment motion be granted in its entirety, and plaintiff's cross-motion addressing those claims correspondingly be denied.

I.    BACKGROUND[1]

---

[1]    In light of the procedural posture of the case, the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No.

At the times relevant to his claims, the plaintiff was entrusted to the custody of the DOCS and designated to the Great Meadow Correctional Facility ("Great Meadow"), a maximum security prison facility located in Comstock, New York.  *See generally* Amended Complaint (Dkt. No. 19) ¶ 3; *see also* Brown Aff. (Dkt. No. 50-5) Exh. A at 60:21-22 (hereinafter cited as "Tapp Dep. (Dkt. No. 50-6) at ___.").  On June 24, 2005, while waiting in a line in the Great Meadows B-block for a call out slip permitting him to go to the library, and later to a scheduled religious service, plaintiff was involved in a physical conflict with correctional officers at the Great Meadow facility.  *See* Amended Complaint (Dkt. No. 19) ¶¶ 4-5, 7-9.  It is that incident, together with events which followed, which form the underpinnings for plaintiff's claims in this action.

Neither Tapp nor the defendants dispute the fact that a physical altercation, initially involving only the plaintiff and Corrections Officer R. Tougas, but with later intervention by other corrections officers, occurred on the date in question.  The parties' respective versions of the controlling events, however, are sharply contradictory, particularly as relates to the issue of who initiated the confrontation.  While both sides agree that the

03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted). To the extent that the parties' versions of the relevant events differ, those discrepancies will be noted.

plaintiff attempted to go to the front of a relatively lengthy line of inmates awaiting call out passes, accustomed as he was to having his daily library pass already written and awaiting him, and that the plaintiff was ordered by Corrections Officer Tougas to return to the back of the line but ignored that directive, it is at this point that the parties' versions of the relevant events diverge.

Defendants assert that upon moving ahead of the other inmates also awaiting call out slips, Tapp was given a direct order by Corrections Officer Tougas to return to his place in line and, when he refused to obey that directive and instead uttered expletives directed toward that officer, was ordered to return to his cell – an instruction which he also ignored. Tougas Decl. (Dkt. No. 50-24) ¶¶ 6-10.  After Tapp refused a further order to place his hands on the cat walk bars, instead assuming an offensive fighting stance, raising his clenched fist and lunging at the officer, a struggle ensued between the two. *Id.*  ¶¶ 10-17.  After signaling an alert in an attempt to gain control of the situation, with the assistance of Corrections Officer Sharrow, another defendant in the action, Tougas was ultimately able to force the plaintiff to lie face down on the floor, at which point mechanical restraints were applied by a third corrections officer, defendant Rando, and plaintiff was transported to the facility hospital for

5

examination, strip frisked, and then taken to the facility SHU.  *Id.* ¶¶ 16-17;
Sharrow Decl. (Dkt. No. 50-22) ¶¶ 4-10 and Exh. A; *see also* Rando Decl.
(Dkt. No. 50-18) ¶ 4.  While at the prison infirmary plaintiff was examined
by defendant Santini-Correa, who did not observe any injuries to the
plaintiff, nor did he complain of any during her examination.  Santini-
Correa Decl. (Dkt. No. 50-8) ¶¶ 5-11 and Exh. A.  During that examination,
Nurse Santini-Correa wiped dried blood which did not appear to be his
from the plaintiff's back.  *Id.*

Plaintiff's sworn submissions recite a significantly different version of
the relevant events.  While acknowledging that he ignored a directive from
Corrections Officer Tougas, and at one point instructed the officer to "shut
the f_ _k up[,]" plaintiff maintains that after a verbal exchange between the
two defendant Tougas "outright attacked" him, "banging [his] head against
cell bars while he pulled on inmate & repeatedly punched [him] in the face,
body & head for no apparent reason."  Amended Complaint (Dkt. No. 19)
¶ 4; *see also* Tapp Dep. (Dkt. No. 50-6) at 66-72.  While acknowledging
that he punched defendant Tougas in the mouth during the course of the
encounter, Tapp also asserts that it was only after he was punched and
his shirt was pulled over his head, adding that he did so in an effort to
defend himself.  *Id.*  Plaintiff also asserts that other corrections employees

6

responded to an alert concerning the incident and continued to assault him and that defendant Michael, a corrections sergeant, stood idly by and refused to intercede on his behalf.  Tapp Dep. (Dkt. No. 50-6) at 72-73.

According to Tapp, once he was subdued and mechanical restraints were applied, he was escorted to the infirmary by defendant Rando who, along the way, intentionally stepped on his leg chains causing him to experience pain in his Achilles tendon.  Tapp Decl. (Dkt. No. 50-6) at 75-76.  Upon his arrival at the facility hospital, plaintiff claims to have complained of pain in his wrist, back, right shoulder, and groin and having requested medical attention for his injuries.  *Id.* at 88.  Plaintiff further maintains that as a result of the incident he experienced blood in his urine, but that at the directive of defendant Michael, Nurse Santini-Correa "refused to note actual injuries of plaintiff such as swollen testicles, blood in urine & stool, lower back pain, bruises to [plaintiff's] wrist & face while she prevented co-workers from seeing [plaintiff] at sick call for" his injuries.  Amended Complaint (Dkt. No. 19), at ¶¶ 5-6.

On the date of the incident, plaintiff was issued a misbehavior report charging him with multiple violations of prison disciplinary rules stemming from the altercation, including assault on staff (Rule 100.11), engaging in violent conduct (Rule 104.11), creating a disturbance (Rule 104.13),

violating a direct order (Rule 106.10), and failure to comply with frisk and search procedures (Rule 115.10).[2]  *See* Amended Complaint (Dkt. No. 19) ¶ 4; Tougas Decl. (Dkt. No. 50-24) ¶ 19 and Exh. A; Harvey Decl. (Dkt. No. 50-10) ¶ 5 and Exh. A, p. 9.  A Tier III superintendent's hearing was convened at Great Meadow to address the charges set forth in the misbehavior report, beginning on July 1, 2005 and ending two weeks later on July 15, 2005; presiding at that hearing was Andrew Harvey, a Commissioner's Hearing Officer ("CHO") employed by the DOCS.[3] Harvey Aff. (Dkt. No. 50-10) ¶¶ 3-6 and Exh. A.  In preparation for that hearing, following the filing of charges, plaintiff was offered a list of DOCS employees available to aid in preparation for the hearing and was assigned defendant Melanie Jones, a DOCS Guidance Specialist at the facility and his designated first choice, as his assistant.  Amended

---

[2]     Plaintiff maintains that this misbehavior report was falsely written by defendant Tougas and deliberately fashioned to make it appear as if the plaintiff caused the incident by punching Tougas and resisting restraint.  *See* Amended Complaint (Dkt. No. 19), at ¶ 4.

[3]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

Complaint (Dkt. No. 19) ¶ 12; Jones Decl. (Dkt. No. 50-14) ¶¶ 2-3 and

Exh. A.  In his amended complaint plaintiff asserts that defendant Jones

conspired with others at the prison to deprive him of "everything that [he]

was entitled too [sic] by due process of law."  Amended Complaint (Dkt.

No. 19) ¶ 12.  Plaintiff's submissions, however, fail to identify any

document or information obtained by defendant Jones that was withheld

from him.

In a declaration filed in support of defendants' summary judgment

motion, defendant Jones advises that she met with the plaintiff on a total

of three occasions to prepare for the impending disciplinary hearing.

Jones Decl. (Dkt. No. 50-14) ¶ 4.  According to Jones, during those

meetings plaintiff requested numerous documents, and asked that she

interview four witnesses identified by him.  *Id.* ¶ 5.  Upon interviewing

those witnesses, defendant Jones ascertained that three of the four would

agree to testify and secured a written statement from the fourth inmate

declining plaintiff's request to testify on his behalf.  *Id.* ¶ 5 and Exh. A.  In

addition, defendant Jones obtained most of the documents requested by

the plaintiff, and advised him that other requested information could not be

provided by prison officials.  *Id.* ¶ 6.  Among the documents withheld by

prison officials from defendant Jones, as plaintiff's assistant, were

Corrections Officer Tougas' medical records.  *Id.* ¶ 7 and Exh. A.

Defendant Jones explained her inability to obtain certain records to the plaintiff and informed him that in her role as his assistant she did not control what documents would be made available to the plaintiff, consistent with institutional security concerns and privacy interests.  *Id.* ¶¶ 8-9.  Defendant Jones also informed the plaintiff of his right to request additional information, either at the hearing or through other avenues.  *Id.* ¶ 7.

At the conclusion of the hearing defendant Harvey found plaintiff guilty of all charges set forth in the misbehavior report, imposing a penalty which included eighteen months of disciplinary SHU confinement, with a corresponding loss of package, commissary and telephone privileges, and additionally recommending a twelve month loss of good time credits.[4]  Harvey Aff. (Dkt. No. 50-10) ¶ 18 and Exh. A at pp. 3-4.

---

[4]     Despite plaintiff's apparent belief otherwise, a Tier III superintendent's hearing officer is not empowered to make a final determination regarding forfeiture of good time credits; such determinations are left to the appropriate facility time allowance committee ("TAC").  *See Dawes v. Kelly,* No. 01CV6276, 2005 WL 2245688, at *3, 8 (W.D.N.Y.  Sep. 14, 2005). Inmate claims regarding improperly withheld good time credits are not appropriately brought under 42 U.S.C. § 1983, the court having no power in such a case to direct that an inmate be released from custody, but instead must be pursued by means of habeas petitions brought pursuant to 28 U.S.C. §§ 2241 and/or 2254.  *See generally Peralta v. Vasquez,* 467 F.3d 98, 104-05 (2d Cir. 2006); *see also Jenkins v. Duncan*, No. 9:02-CV-0673, 2003 WL 22139796, at *2-3 (N.D.N.Y. Sep. 16, 2003) (Sharpe, D.J.).

CHO Harvey's determination, including the penalty imposed, was upheld following plaintiff's appeal of that decision to defendant Donald Selsky, formerly an Assistant DOCS Commissioner and the Director of Special Housing and Inmate Disciplinary Programs for the agency.  Selsky Decl. (Dkt. No. 50-20) ¶¶ 2, 7 and Exh. A.  Plaintiff opted not to avail himself of the right to commence a proceeding in New York State Supreme Court under Article 78 of the N.Y. Civil Practice Law and Rules further challenging that disciplinary determination.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on November 29, 2005, and later filed an amended complaint - the operative pleading now before the court - on April 11, 2006.[5]   *See* Dkt. Nos. 1, 19.  In his complaint, as amended, plaintiff asserts multiple constitutional violations relating to the events occurring on and after June 24, 2005 at Great Meadow including, *inter alia,* the use of excessive force and the failure to protect him from injury, deliberate indifference to his injuries, the deprivation of procedural due

---

[5]      From a review of the court's records it appears that the amendment was prompted by a court order dated March 28, 2006 directing the filing of an amended complaint naming Corrections Officer Wilson as an additional defendant before that officer could be served as a defendant.  Dkt. No. 10.

process, and denial of equal protection.[6,7]  Named as defendants in

plaintiff's amended complaint, apparently both in their official capacities

and as individuals, are various DOCS employees, including Assistant

Commissioner Selsky; Sergeant Michael; CHO Harvey; Corrections

Officers Tougas, Wilson, Rando, and Sharrow; and Nurse Santini-Correa.

Amended Complaint (Dkt. No. 19) at ¶¶ 4-12.

On February 20, 2008, following the close of discovery, the

defendants filed a motion seeking summary judgment dismissing plaintiff's

complaint in its entirety.  *See generally* Defendants' Motion (Dkt. No. 50).

In their motion defendants offer a variety of grounds for dismissal of

plaintiff's claims, asserting deficiency of plaintiff's claims for violations of

the Eighth Amendment, plaintiff's due process rights, and medical

indifference.  *Id.*  Defendants also argue that plaintiff has not raised a

---

[6]       The introductory portion of plaintiff's complaint makes reference to
supplemental jurisdiction over state law tort claims pursuant to 28 U.S.C. § 1367.  *See*
Amended Complaint (Dkt. No. 19) ¶ 2.  The body of plaintiff's complaint, however,
does not assert any such claims, which in any event could well be precluded under
N.Y. Corrections Law § 24.  *See Ierardi v. Sisco*, 119 F.3d 183, 186-88 (2d Cir. 1997).

[7]       In his motion for summary judgment plaintiff addresses additional claims
not included in his complaint, including discrimination, violation of his right to free
speech, and lost property.  *See generally* Plaintiff's Motion (Dkt. No. 56).  Because
those matters are raised for the first time on motion for summary judgment, and they
are not included within his amended complaint, the court will not address these
additional claims.  *See, e.g., Caidor v. Potter*, No. 5:02-CV-1486, 2007 WL 2847229,
at *8 (N.D.N.Y. Sep. 26, 2007) (Mordue, C.J.) (refusing to hear a claim raised for the
first time in a summary judgment motion).

cognizable constitutional question pertaining to the allegedly false misbehavior report issued by defendant Tougas, that this court lacks subject matter jurisdiction to decide plaintiff's due process claim based upon his failure to first invalidate the hearing results, and that they are entitled to qualified immunity. *Id.* In response, plaintiff has opposed defendants' motion and cross-moved for summary judgment, offering substantially the same arguments as those found in his complaint.[8] *See generally* Plaintiff's Motion (Dkt. No. 56).

The parties' motions are now ripe for determination, and have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* FED. R. CIV. P. 72(b).

III.    DISCUSSION

          A.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and

---

[8]    Although the plaintiff devotes a portion of his motion submission to discussion of his efforts to exhaust administrative remedies, because the defendants have not raised failure to exhaust as an affirmative defense there is no need to address the issue in this report and recommendation. *See* Plaintiff's Brief (Dkt. No. 56) at Argument, Point 2; *see also* Schwartz Decl. (Dkt. No. 61) at ¶¶ 3-4.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.

Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

inappropriate where "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of

Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also

Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is

appropriate only when "there can be but one reasonable conclusion as to

the verdict").

### B.   Excessive Force

The centerpiece of plaintiff's complaint is his claim of being beaten

15

on June 24, 2005, initially by Corrections Officer Tougas, and later by others including Corrections Officers Wilson, Rando, and Sharrow, and that Sergeant Michael failed to intervene to protect him from injury.  This component of plaintiff's civil rights claim implicates potential violations of the right of a sentenced prison inmate to be free from cruel and unusual punishment, as guaranteed under the Eighth Amendment.

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).  Analysis of claims of cruel and unusual punishment requires both objective and subjective examinations. *Hudson,* 503 U.S. at 8, 112 S. Ct. at 999; *Wilson v. Seiter*, 501 U.S. 294,

298-99, 111 S. Ct. 2321, 2324 (1991); *Griffen*, 193 F.3d at 91.

The objective prong of the inquiry is contextual, and relies upon "contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999-1000 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)).  When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff.  While the absence of significant injury is certainly relevant, it is not dispositive.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under *Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or severe,'" a plaintiff may still recover if "'the force used was unreasonable and excessive.'"  *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988) (quoting *Robinson v. Via*, 821 F.2d 913, 924 (2d Cir. 1987)).

Turning to the subjective element, to prevail the plaintiff must

17

establish that defendants acted with a sufficiently culpable state of mind. *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999).  That determination is informed by four factors, including 1) the need for application of force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085.  The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson*, 481 F.2d at 1033).

The portion of defendants' motion addressing whether plaintiff was subjected to a level of force which a reasonable factfinder could conclude was unlawful, considered against this backdrop, presents a close case. Because the versions of the relevant events offered by the various participants are sharply contradictory, it could be argued that defendants' motion invites the court to make a credibility determination, something which courts are generally loathe to do on motion for summary judgment. *See Snyder v. Goord*, 9:05-cv-01284, 2007 WL 957530, at *9 (N.D.N.Y. 2007) (McAvoy, S.J.).

18

In this instance, however, the evidence now before the court
overwhelmingly establishes that the incident and resulting injuries to the
participants was precipitated by the plaintiff and his admitted failure to
comply with lawful directives of C.O. Tougas and his admonition to that
corrections officer that he should "shut the f_ _k up".[9]  Tapp Dep. (Dkt. No.
50-6) at 66.  Coupled with these factors is the stark contrast presented by
evidence of the injuries suffered by the two primary participants.
Corrections Officer Tougas, who the plaintiff admitted punching, received
an injury during the conflict which required twelve stitches to repair.
Tougas Decl. (Dkt. No. 50-24) ¶ 20; Tapp Dep. (Dkt. No. 50-6) at p. 69.

---

[9]      While the plaintiff apparently believed that Corrections Officer Tougas'
directive that he return to the end of the line was somehow unreasonable, that belief
did not legitimize Tapp's acknowledged failure to comply with that directive. *See
Kalwasinski v. Artuz,* No. 02 CV 2582, 2003 WL 22973420, at *3 (S.D.N.Y. 2003). As
one court has noted,

> Under New York law, "inmates are not free to choose which orders
> to obey and which to ignore. *Farid v. Coombe,* 236 A.D.2d 660,
> 653 N.Y.S.2d 715, 716 (App.Div.1997). This is true even where
> the inmate feels that the order infringes upon his or her rights.
> "Inmates may not refuse to obey orders issued by correction
> officers, even if the orders appear to be without authority or to
> infringe upon the inmate's constitutional rights." *Keith v. Coombe*,
> 235 A.D.2d 879, 880, 653 N.Y.S.2d 401 (N.Y.App.Div.1997). The
> penological rationale for this is clear. "The threat to prison security
> would be manifest were we to allow inmates to decide for
> themselves which orders to obey and which to ignore as violative
> of their rights and to act accordingly." *Rivera v. Smith*, 63 N.Y.2d
> 501, 516, 483 N.Y.S.2d 187, 472 N.E.2d 1015 (1984).

*Kalwasinski v. Artuz,* 2003 WL 22973420, at *3.

By comparison the plaintiff, who contends that he was beaten, punched, dragged, and stomped on by Corrections Officer Tougas, with the assistance of Corrections Officers Wilson, Sharrow and Rando, suffered little if any injury despite the alleged participation of four corrections officers, as evidenced by both the sworn declaration of Nurse Santini-Correa, who examined him shortly after the incident, a videotape of plaintiff's escort following the incident, and photographs taken of him on that day.  *See* Santini-Correa Decl. (Dkt. No. 50-8) ¶¶ 5-10; *see also* Dkt. No. 50-12.  This evidence, augmented by a hearing officer's finding, following a disciplinary hearing at which plaintiff was provided due process, that it was the plaintiff who in fact assaulted staff members, including Corrections Officer Tougas, on the date in question, and the fact that at least on two prior occasions plaintiff was subjected to lengthy periods of disciplinary SHU confinement for having assaulted other DOCS staff members, convinces me that no reasonable factfinder could credit plaintiff's version and determine that the force applied by the corrections officers involved in the incident, including Corrections Officer Tougas, to control the situation and restore the safety and security of the institution,

was unlawfully excessive.[10]  *See Jeffreys v. City of New York,* 426 F.3d

549, 555 (2d Cir. 2005) (in circumstances where the record is lacking in

support of plaintiff's contradictory and incomplete statements, summary

judgment may be appropriate upon the basis that no reasonable factfinder

could credit plaintiff's version of the relevant events); *Aziz Zarif Shabazz v.

Pico,* 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (same); *see also Panetta v.

Crowley,* 460 F.3d 388, 394 (2d Cir. 2006) (noting that "[j]udgment as a

matter of law is appropriate if no reasonable factfinder could have viewed

the evidence as supporting plaintiff's claim").  Accordingly, I recommend

dismissal of plaintiff's Eighth Amendment claim against Corrections

Officer Tougas, Wilson, Michael, Rando and Sharrow as a matter of law.

_____C.    Deliberate Indifference

_____Liberally construed, plaintiff's amended complaint also appears to

assert deliberate indifference on the part of the defendants to his injuries

following the June 24, 2005 incident.  Amended Complaint (Dkt. No. 19)

---

[10]    The incident at Great Meadow was not the first involving an altercation between the plaintiff and corrections officers.  In 1996, while at the Attica Correctional Facility, plaintiff was found guilty of charges related to an alleged assault upon one or more corrections officers and was sentenced to serve three years of disciplinary confinement in the Attica SHU.  *See* Tapp Dep. (Dkt. No. 50-6) at 53:3-55:22. Similarly, in 2000, while incarcerated at the Wende Correctional Facility, plaintiff became involved in a confrontation with a corrections officer, again receiving a penalty which included disciplinary confinement of between eighteen months and two years following a hearing to address the matter.  *Id.* at 55:24-58:13.

21

¶¶ 6-7.  While this aspect of plaintiff's complaint appears to focus principally on the actions of Nurse Santini-Correa, in his motion for summary judgment plaintiff seems to expand that claim, though without disclosing specifics, explaining that it is also being asserted against defendant Jones, his assigned hearing assistant, and Sergeant Michael. *See* Defendants' Motion for Summary Judgment (Dkt. No. 56) at p. 1.  In their motion, defendants also seek dismissal of this cause of action.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

22

must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

23

presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts.  *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment,'" a condition that "'significantly affects'" a prisoner's daily activities, or causes "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *2-3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*,

103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at \*2 (same).

It is well-established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992). The question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment"; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998).

_____Plaintiff alleges in his complaint that as a result of the incident, he suffered from "swollen testicles, blood in urine & stool, lower back pain, bruises to [his] wrist & face" which defendant Santini-Correa allegedly refused to note, as well as cuts to his wrists, a shoulder "pop," numbness in his right shoulder, left thumb, and both wrists, as well as a rash on his

wrists.[11]  Amended Complaint (Dkt. No. 19) ¶¶ 6-8.  Noticeably absent

from plaintiff's complaint is any indication that these conditions gave rise

to extreme pain, degeneration, or death.[12]  Even crediting plaintiff's claims

concerning these injuries, it does not appear that plaintiff has set forth a

"sufficiently serious" condition to support a claim for either deliberate or

medical indifference.  *See Peterson v. Miller*, No. 9:04-CV-797, 2007 WL

2071743, at *7 (N.D.N.Y. July 13, 2007) (noting that a "dull pain" in

plaintiff's back and persistent rash on plaintiff's foot did not raise a

constitutional issue) (Hurd, D.J. and Peebles, M.J) (citing *Hathaway*, 37

F.3d at 66; *Salaam v. Adams*, No. 03-CV-0517, 2006 WL 2827687, at *10

(N.D.N.Y. Sept. 29, 2006)); *see also Ford v. Phillips*, No. 05 Civ. 6646,

---

[11]     In his summary judgment motion plaintiff also raises, for the first time, a claim that he was denied an asthma inhaler.  *See* Plaintiff's Statement of Undisputed Facts (Dkt. No. 56) at § 5.  Because the first mention of any issue pertaining to plaintiff's asthma medication has occurred at this late stage in the case, I recommend against expansion of his indifference cause of action to encompass this claim.  *See, e.g., Caidor*, 2007 WL 2847229, at *8.

[12]     In his motion for summary judgment plaintiff now asserts that his back condition has been "diagnosed as chronic serious pain," and speculates as to his physical ability to have children in the future.  *See* Plaintiff's Motion (Dkt. No. 56), at p. 6; Plaintiff's Statement of Undisputed Facts (Dkt. No. 56), at § 9. It is also noted that while plaintiff's ambulatory record entry for "6/24/05" reveals "[n]o injuries noted or voiced" by the plaintiff, an entry made a day later reveals that Nurse Santini-Correa observed "dry abrasion[s]" on plaintiff's wrist and upper extremities, along with numbness of his left thumb and two big toes, all of which appear to be injuries that plaintiff "want[ed] . . . noted in [his] chart."  *See* Plaintiff's Ambulatory Record (Dkt. No. 56-4), Exhs. 21-22.  These matters are far too speculative and attenuated from the incident in question to constitute serious medical needs arising from the June 24, 2005 incident.

2007 WL 946703, at *12 & n.70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, and blood in his urine for a few weeks did not constitute a sufficiently serious condition giving rise to a medical indifference claim).

Moreover, even assuming the existence of a serious medical need, the record now before the court is also lacking in any evidence from which a reasonable factfinder could conclude that any of those three defendants implicated in this claim, and in particular Nurse Santini-Correa, was deliberately indifferent to his medical needs.  At best, plaintiff appears to assert a claim of negligence or malpractice against Nurse Santini-Correa for failure to treat his injuries; such a claim, however, is not cognizable under the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross*, 784 F.Supp. at 44.  As for the other defendants, the record is devoid of any evidence to suggest their awareness of, and deliberate indifference to, plaintiff's allegedly serious medical needs.

In sum, because plaintiff has established neither the existence of a serious medical need nor defendants' subjective, deliberate indifference to any such need, his medical indifference claim is subject to dismissal as a matter of law.

D.     <u>False Misbehavior Report</u>

One of the claims in this action is predicated upon plaintiff's contention that the misbehavior report issued by Corrections Officer Tougas, following the June 24, 2005 incident, was fabricated.  In their motion, defendants seek dismissal of this claim as lacking in merit.

As defendants correctly note, the mere allegation that a false misbehavior report has been issued against an inmate, standing alone, does not implicate constitutional considerations. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  Proof that a false misbehavior report has been issued in response to an inmate having engaged in activity protected under the First Amendment, however, may suffice to support a claim of unlawful retaliation.  *See Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir. 1988).

A thorough canvas of the record in this case, including plaintiff's amended complaint, fails to reveal any evidence tending to suggest that the misbehavior report issued in this case was in retaliation for Tapp having engaged in protected activity.  Because plaintiff has not raised any further allegations concerning the allegedly false misbehavior report, any constitutional claims associated with it are subject to dismissal as a matter

of law.

### E.    Procedural Due Process

A second major theme of plaintiff's amended complaint surrounds the procedures which followed the issuance of the June 24, 2005 misbehavior report.  Plaintiff contends that during the course of the ensuing disciplinary proceedings he was denied procedural due process, and that assigned hearing officer was biased.[13]  Those involved in this cause of action include defendants Harvey, the hearing officer; Jones the corrections employee assigned to assist the plaintiff; and Selsky, the Assistant DOCS Commissioner who upheld the hearing determination on appeal.  Defendants also seek dismissal of this claim as a matter of law.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff

---

[13]    Plaintiff also argues that the hearing did not comply with governing State requirements, in that it was not commenced within seven days of the filing of charges and did not end within the required fourteen days, and additionally because extensions were not properly sought and validly granted.  Amended Complaint (Dkt. No. 19) ¶ 10. This portion of plaintiff's due process claim implicates only state procedural requirements which if violated nonetheless would not support a federal constitutional claim under section 1983. *See, e.g., Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987).  To the extent that federal due process considerations are called into play, it appears that plaintiff's disciplinary hearing did occur within the "reasonable time" required by federal law. *See Green v. Bauvi*, 46 F.3d 189, 195 (2d Cir. 1995); *see also* Harvey Declaration (Dkt No. 50-10) at §§ 7-9 (explaining that the hearing could not start until one day after the applicable state requirement of seven days due to a high volume of cases and that a six-day extension was granted due to the unavailability of defendant Tougas and certain of plaintiff's witnesses to testify).

must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).   The allegation that as a result of the disciplinary hearing at issue plaintiff was subjected to eighteen months of disciplinary confinement in a facility SHU suffices to establish the deprivation of a liberty interest and trigger the due process protections of the Fourteenth Amendment.  *See Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir.2004) (citing *Welch v. Bartlett*, 196 F.3d 389, 394 n.4 (2d Cir.1999)); see also *Alvarez v. Coughlin*, No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.)).

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established; the contours of the requisite protections were discussed in some detail in the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and

penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  In addition, in order to pass muster under the Fourteenth Amendment a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985).

The record now before the court convincingly establishes that plaintiff received the requisite due process during the course of the disciplinary proceedings against him.  The record discloses, and the plaintiff does not dispute, that he received written notice of the charges against him, as well as a written determination from the hearing officer, following the hearing, outlining his findings.

One of the issues raised in support of his due process argument is plaintiff's contention that he was precluded from presenting witnesses on his behalf.  Undeniably, under *Wolff* and its progeny an inmate must be afforded the right to call witnesses and present evidence in his or her defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  418 U.S. at 566, 94 S. Ct. at

2979.  Due process requires that the hearing officer explain why any witnesses requested were not allowed to testify.  *Ponte*, 471 U.S. at 497, 105 S. Ct. at 2196; *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990) (citing *Ponte*); *Parris v. Coughlin*, No. 90-CV-414, 1993 WL 328199, at *5 (N.D.N.Y. Aug. 24, 1993) (Hurd, M.J) (same).  These reasons may be provided at the disciplinary hearing itself, or by presenting testimony in the course of a later constitutional challenge.  *Ponte*, 471 U.S. at 497, 105 S. Ct. at 2196; *Parris*, 1993 WL 328199, at *6 (citing *Ponte*).  The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but rather upon the official to prove the rationality of his or her position.  *Fox*, 893 F.2d at 478 (citing *Ponte*); *Parris*, 1993 WL 328199, at *6 (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30-31 (2d Cir. 1991)).

In this case the record discloses that the plaintiff was permitted to call all of the witnesses necessary to present a meaningful defense to the charges.  At the outset of the hearing plaintiff requested the presence of four inmate witnesses, one of whom refused to testify after which plaintiff advised the hearing officer that he did not wish to pursue securing testimony from him in any event.  Jones Decl. (Dkt. No. 50-14) Exh. A; Harvey Decl. (Dkt. No. 50-10) Exh. A at pp. 1-2.  The remaining three

32

witnesses were permitted to testify on behalf of the plaintiff.  Harvey Decl.

(Dkt. No. 50-10) Exh. A at pp. 17-27.  While the plaintiff later announced

his intention to call twelve additional witnesses, and the hearing officer

permitted him to select four – all of whom, when contacted, indicated their

refusal to testify – plaintiff subsequently advised CHO Harvey that he did

not find it necessary to call other witnesses all of whom would have

repeated versions of events already given by himself and his other

witnesses.[14]  Harvey Decl. (Dkt. No. 50-10) Exh. C at pp. 41-47.

   Under these circumstances it appears that CHO Harvey had a

rational basis to conclude that calling the additional requested witnesses

would have been cumulative and unnecessary.  Similarly, it appears that

the hearing officer had a reasonable basis to conclude that calling the

witnesses who had refused to testify would be futile.  *Dumpson v. Rourke*,

No. CIVA96CV621, 1997 WL 610652, at *5 (N.D.N.Y. Sept. 26, 1997)

(Pooler, D.J.) (citing *Silva v. Casey*, 992 F.2d 20, 21-22 (2d Cir. 1993)).

"Clearly, if a witness will not testify if called, it cannot be a 'necessity' to

call him."  *Silva*, 992 F.2d at 22; *see also Wolff*, 418 U.S. at 568-69, 94 S.

Ct. at 2981 (recognizing discretion of prison officials to decline to call as

---

[14]     In addition to the inmate witnesses CHO Harvey also permitted plaintiff
to call to elicit further testimony from Corrections Officers Walcak and Tougas.  Harvey
Decl. (Dkt. No. 50-10) Exh. C. at pp. 41-47.

witnesses fellow inmates who do not wish to testify).  Regarding the two witnesses who refused to testify with an explanation, a hearing officer has no power to force an inmate to testify, and when an inmate refuses, the hearing officer need not call that witness. *Silva*, 992 F.2d at 21-22; *Dumpson*, 1997 WL 610652, at *5 (citing *Greene v. Coughlin*, No. 93 Civ. 2805, 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995) (hearing officer need not make independent evaluation of the basis for refusal to testify)). Finally, with regard to the plaintiff's eight additional witnesses who would have stated "basically . . . the same thing," Harvey clearly had a rational basis to refuse to call these witnesses as their testimony would be unnecessarily repetitive. Thus, neither defendant Harvey or Jones took part in any improper denial of plaintiff's right to call witnesses to testify in his behalf.

It appears that the plaintiff finds fault with the aid rendered by the selected hearing assistant, Melanie Jones. The Fourteenth Amendment requires only that prison officials provide an inmate accused of a disciplinary infraction, in some though not necessarily all circumstances, meaningful assistance in preparing a defense. *Eng v. Coughlin* 858 F.2d 889, 897 (2d Cir.1988) (holding that in some circumstances, "[p]rison authorities have a constitutional obligation to provide assistance to an

34

inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges").  The assistant acts as a "*surrogate - to do what the inmate would have done were he able.*" *Silva*, 992 F.2d at 22 (emphasis in original).  An assistant also may not act in bad faith in aiding a prisoner in mounting a defense.  *Id.*  The law does not require that the assistant assigned be a trained lawyer or that the assistant be held to a standard of competent representation guaranteed to criminal defendants under the Sixth Amendment.  *Contrast Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) (outlining the contours of the right to effective assistance of counsel guaranteed to criminal defendants).  Despite plaintiff's protestations regarding the adequacy of her aid, the record discloses that defendant Jones provided him with capable assistance in preparing for the hearing, and that she met with the plaintiff on three occasions, interviewed the witnesses which he designated, and obtained a significant amount of the materials requested by him.  *See generally* Jones Decl. (Dkt. No. 50-14) ¶¶ 3-9.  Having carefully reviewed the record, I find no basis to conclude that plaintiff was not afforded the meaningful assistance guaranteed under *Wolff.*

Although plaintiff does not place significant emphasis on this element, the due process provision of the Fourteenth Amendment

35

requires that a hearing officer's disciplinary determination be supported by "some evidence." *See Hill*, 472 U.S. at 447, 105 S. Ct. at 2770; *Morales v. Woods*, No. 9:06-CV-15, 2008 WL 686801, at *6 (N.D.N.Y. Mar. 10, 2008) (McAvoy, S.J.) (citations omitted).  Based upon a careful review of the record developed during the course of plaintiff's disciplinary proceeding, I conclude that no reasonable factfinder could determine that the hearing officer's decision in this case was not supported by the requisite modicum of evidence.

A focal point of plaintiff's due process argument relates to alleged bias on the part of the hearing officer.  The fact that the hearing officer appointed to address the charges against Tapp was a DOCS employee, as is normally the case, does not disqualify him from serving as a hearing officer or in and of itself provide reason to question his objectivity.  Prison disciplinary hearing officers are not held to the same standard of neutrality as are adjudicators in other types of controversies.  *See Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir. 1996).  Such a hearing officer must only be sufficiently impartial as to avoid "a hazard of arbitrary decisionmaking," *Wolff,* 418 U.S. at 571, 94 S. Ct. at 2982, and is deserving of a presumption of honestly and integrity.  *Winfrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464 (1985); *Rivera v. Senkowski,* 62 F.3d 80, 86 (2d Cir.

1995).  Based upon thorough review of the record associated with the

disciplinary proceeding, I am unable to discern any basis from which a

reasonable factfinder could conclude that CHO Harvey was biased or

partial.  Simply stated, plaintiff's bald allegation of bias, representing little

more than sheer speculation on his part, is insufficient to overcome the

presumption of impartiality.  *See Lebron v. Artus*, No. 06-CV-0532, 2008

WL 111194, at *15 (W.D.N.Y. Jan. 09, 2008).

In sum, because the record firmly discloses that plaintiff was

afforded all of the process to which he was entitled prior to the imposition

of disciplinary SHU confinement, I recommend dismissal of plaintiff's due

process claim against defendants Harvey, Jones and Selsky.[15]

F.    Equal Protection

In his amended complaint, plaintiff incants that he was denied equal

protection by the defendants.  Neither plaintiff's amended complaint nor

his motion papers, however, articulates the basis for that claim.

---

[15]    In light of this determination, I find it unnecessary to address defendants'
alternative argument, to the effect that plaintiff's section 1983 surrounding the
disciplinary proceeding are precluded under *Heck v. Humphrey,* 512 U.S. 477, 114 S.
Ct. 2364 (1994) and *Edwards v. Balisok,* 520 U.S. 641, 117 S. Ct. 1584 (1997).  As
was previous noted, however, plaintiff may not necessarily be precluded from pursuing
section 1983 claims surrounding his disciplinary proceeding under *Edwards* and *Heck,*
despite not having first secured reversal of that determination, provided that he agrees
to forego any potential habeas corpus claim challenging the loss of good time credits
which resulted from the recommendation made following that hearing.  *See Peralta,*
467 F.3d at 104-05.

The Equal Protection Clause directs state actors to treat similarly situated people alike. *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)). The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

Because plaintiff has offered no proof that he was the subject of an improper classification, nor has he adduced any evidence of either invidious motivation for defendants' actions or discriminatory motivation, I recommend summary dismissal of plaintiff's equal protection claim.

G.   <u>Conspiracy</u>

Also embedded within plaintiff's complaint, when liberally construed,

is a claim that the defendants conspired to deprive him of his civil rights.

In a doctrine rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in the context of business entities, since inception has been expanded to apply to business corporations and public entities as well, the intra-corporate conspiracy doctrine provides that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances.  *See, e.g., Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002); *Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:05CV1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).  In this instance plaintiff alleges that the various defendants named conspired to deprive him of his civil rights.  Since those conspiracy claims are asserted against officers, agents or employees of the DOCS, each acting within the scope of his or her employment, they are precluded by virtue of the intra-corporate conspiracy doctrine.  *See Little v. City of New York,* 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citations omitted); *Lewis v. Goord*, No. 9:06-CV-504, 2008 WL 902179, at *4 (N.D.N.Y. Mar. 31, 2008) (Scullin, S.J.).

39

IV.   <u>SUMMARY AND RECOMMENDATION</u>

_____The plaintiff in this action has advanced an array of constitutional claims arising out of an incident occurring on June 24, 2005, alleging the use of excessive force by prison officials, the failure to adequately address the injuries resulting from the incident, and due process deprivations associated with the disciplinary proceedings which ensued.  Having carefully reviewed plaintiff's amended complaint, I conclude that no reasonable factfinder could credit plaintiff's version of the incident, and determine that defendants did not violate his rights by exerting unnecessary force against him, in violation of the Eighth Amendment. Similarly, I find that plaintiff has not alleged or proven the existence of a serious medical need associated with injuries stemming from the incident, nor has he offered evidence tending to establish the defendants' subjective indifference to his medical needs, and therefore cannot support a medical indifference claim under the Eighth Amendment.  Lastly, I find that while plaintiff was deprived of a liberty interest by virtue of the disciplinary proceedings against him, he received the requisite procedural due process guaranteed under the Fourteenth Amendment during the course of that deprivation.  Accordingly, finding no other cognizable constitutional claim asserted in his amended complaint and supported by

40

evidence in the record now before the court, I conclude that no reasonable factfinder could find liability on the part of one or more of the named defendants on any of plaintiff's claims, and therefore recommend dismissal of his complaint in its entirety as a matter of law.[16]  Accordingly, it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 50) be GRANTED, and plaintiff's complaint in this action be DISMISSED its entirety; and is further

RECOMMENDED that in light of this determination, plaintiff's motion for summary judgment (Dkt. No. 56) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); FED. R. CIV. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

[16]      In light of this determination, I find it unnecessary to address the additional issue of qualified immunity, also raised by the defendants in support of their motion.  *See Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151 (2001).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 11, 2008
            Syracuse, NY

42